IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

K7 & ASSOCIATES, INC. doing             :
business as LIREMODEL.COM,              :
                                        :       Civil Action No. 4: 06-CV-2229
                        Plaintiff,      :
                                        :
        v.                              :
                                        :       (Judge McClure)
TOTAL BASEMENT                          :
SOLUTIONS, INC.                         :
                                        :
                        Defendant.      :

**O R D E R**

March 1, 2007

**BACKGROUND:**

On November 15, 2006, plaintiff K7 & Associates, Inc. ("K7") instituted

this civil action against defendant Total Basement Solutions, Inc. ("TBS").  In its

complaint, plaintiff alleges that defendant breached a contract that the two parties

entered into in February, 2006.  On January 8, 2007 defendant filed an answer to

plaintiff's complaint.  In its answer, defendant asserted a counterclaim against

plaintiff alleging that plaintiff was in fact the party who breached the contract.

On January 31, 2007, plaintiff filed a motion to dismiss defendant's

counterclaim.  (Rec. Doc. No. 15.)  The motion is now fully briefed and ripe for

our decision.  Now, for the following reasons, we will grant plaintiff's motion.

1

**DISCUSSION:**

## I.  Motion to Dismiss Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must view all allegations stated in the complaint as true and construe all inferences in the light most favorable to plaintiff.  Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  This standard is the same for a motion to dismiss a counterclaim; the court must view all allegations in the counterclaim as true and construe all inferences in the light most favorable to the defendant.  United States v. Union Gas Co., 743 F.Supp. 1144, 1150 (E.D.Pa. 1990) (Bechtle, C.J.).

In ruling on such a motion, the court primarily considers the allegations of the pleading, but is not required to consider legal conclusions alleged in the complaint.  Kost, 1 F.3d at 183.  At the motion to dismiss stage, the court considers whether the non-moving party is entitled to offer evidence to support the allegations in the complaint.  Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000).  A complaint or counterclaim should be dismissed only if the court, from evaluating the allegations, is certain that under any set of facts relief cannot be granted.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Markowitz v. Northeast Land, Co.,

906 F.2d 100, 103 (3d Cir. 1994).

The failure-to-state-a-claim standard of Rule 12(b)(6) "streamlines litigation by dispensing with needless discovery and factfinding."  <u>Neitzke v. Williams</u>, 490 U.S. 319, 326-27 (1989).  A court may dismiss a claim under Rule 12(b)(6) where there is a "dispositive issue of law."  <u>Id.</u> at 326.  If it is beyond a doubt that the non-moving party can prove no set of facts in support of its allegations, then a claim must be dismissed "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."  <u>Id.</u> at 327.

## II.  Statement of Relevant Allegations

In its complaint, K7 alleges that on or about February 22, 2006, it entered into a contract with TBS in which TBS granted a dealership to K7 with the exclusive right to sell TBS's products in a certain area.[1]  (Rec. Doc. No. 1, ¶ 5.) The contract specified that K7 was given six months from the date of contracting to begin operations.  (<u>Id.</u> ¶ 11.)  Following the beginning of operations, K7 was given

---

[1]Its noted that in its complaint, K7 alleges that it granted TBS the dealership. (Rec. Doc. No. 1, ¶ 5) ("Plaintiff granted to Defendant a 'dealership' with the exclusive right to sell products of the Plaintiff within an approved exclusive area.").  In its answer, defendant admits this to be true.  (Rec. Doc. No. 8, ¶ 5.) Yet, it appears that both parties are mistaken.  From the briefs filed in connection with this motion, it appearsthat TBS produces the products and K7 is the dealer with the exclusive right to sell those products in a certain area.  (Rec. Doc. No 16, at 2) ("TBS granted to K7 a dealership with the exclusive right to sell TBS' products within two counties in New York.")

a six-month grace period in which no sales quota was assessed.  (<u>Id.</u> ¶ 10.)  At the

end of the grace period, K7 then had to purchase an average of $84,000 per month

for the first twelve months following the grace period, for a total of $1,008,000.

(<u>Id.</u>)  The annual purchase requirement would then increase ten percent each year

until the termination of the contract.  (<u>Id.</u>)  Finally, the contract gave TBS the

option to terminate the agreement if K7 failed to meet the minimum sales quota for

any twelve-month period.  (<u>Id.</u>)

K7 alleges that it began operations on or about May 5, 2006.  Then, on

October 11, 2006, it received a letter from TBS terminating the agreement because

it had not achieved the minimum sales quota required by the contract.  (<u>Id.</u> ¶ 12.)

In its answer and counterclaim, TBS disputes the date that K7 began

operations.  Specifically, TBS alleges that K7 began operations on March 16, 2006.

(Rec. Doc. No. 8, ¶ 11.)  Therefore, the grace period ended on September 16, 2006.

(<u>Id.</u> ¶ 32) Then, it alleges that K7 breached its obligation to buy $84,000 in

materials from TBS during the period of September 16, 2006 to October 12, 2006.

(<u>Id.</u> ¶¶ 42-43.)  Specifically, TBS alleges that K7 purchased $0 in material during

this time period.  (<u>Id.</u> ¶ 44.)  Furthermore, although not specifically discussed

under the "Counterclaim" portion of its answer, TBS alleges that K7 breached its

obligation to invest a minimum amount of $100,000 per month in marketing (<u>Id.</u> ¶¶

4

28-30) and to use best efforts to sell TBS's product (<u>Id.</u> ¶ 36).

## II.  K7's Motion to Dismiss TBS's Counterclaim

In its motion, K7 argues that it could not have breached the contract by failing to purchase $84,000 in materials from September 16, 2006 to October 12, 2006.  (Rec. Doc. No. 16.)  Specifically, it argues that it must only purchase an <u>average</u> of $84,000 per month for the first twelve months following the grace period and not $84,000 each and every month.  (<u>Id.</u> at 5-6.)  Furthermore, it argues that even if the contract required it to purchase at least $84,000 each month, one month had not yet passed when TBS terminated the contract.  (<u>Id.</u> at 7.)

To the contrary, TBS argues that the contract imposed a duty on K7 to purchase $84,000 in materials each and every month for the twelve months following the grace period.  (Rec. Doc. No. 21, at 6.)  In doing so, TBS argues that the use of the word "average" in the contract simply indicates the manner by which the monthly minimum is to be calculated.  (<u>Id.</u>)

As already discussed, for the purposes of a motion to dismiss a counterclaim, we must assume the factual allegations in the counterclaim are true. <u>Hishon</u>, 467 U.S. at 73.  In its answer and counterclaim, TBS admits that the contract contained a six-month grace period.  (Rec. Doc. No. 8, ¶ 32.)  Furthermore, TBS admits that the contract stated that "[K7] agrees to purchase an

average of $84,000 per month in materials from [TBS]." (Id. ¶ 31.)  TBS alleges

that the six-month grace period began on March 16, 2006 and ended on September

16, 2006.  (Id. ¶¶ 32, 42.)  Then, it argues that K7 had an obligation to purchase

$84,000 each month in materials.  (Id. ¶ 43.)  K7 then allegedly breached that

obligation when it purchased $0 in materials during the September 16 to October

12 time period.  (Id. ¶ 44.)

There are two fatal flaws in TBS's counterclaim.  First, the contract

expressly obligates K7 to purchase "an average of $84,000 per month" for the

twelve months following the grace period.  (Rec. Doc. No. 8, ¶ 31.)  Therefore, the

fact that K7 purchased zero dollars in materials during the first month following

the grace period does not result in a breach of contract.  In fact, K7 could purchase

zero dollars in materials for the first eleven months and then purchase $1,008,000

($84,000 multiplied by twelve) in materials in the twelfth month and still fulfill its

obligation to purchase an average of $84,000 per month.  Furthermore, TBS's

argument that the word "average" was used simply to indicate the manner by

which the monthly minimum is to be calculated fails because it is an unreasonable

reading of the contract's language.  The contract expressly says that K7 must

purchase an "an average of $84,000 per month." (Id.)  It does not state that K7

must purchase $84,000 per month.

Second, even if the contract expressly required K7 to purchase at least $84,000 each and every month (which it does not), TBS did not even give K7 one month to do so before terminating the contract.  Using TBS's dates, it alleges that K7's obligation to meet a minimum sales quota "began on September 16, 2006 and ended on October 12, 2006."  (Rec. Doc. No. 8, ¶ 42.)  This is not one month.  We do not understand how K7 could have breached its alleged obligation to purchase $84,000 per month on October 12 when it could have purchased $84,000 in materials on October 13 and still have purchased $84,000 in the first month following the grace period.  Thus, for both of the reasons just discussed, TBS's counterclaim that K7 breached the contract by failing to purchase $84,000 in materials from  September 16, 2006 to October 12, 2006 fails to state a claim upon which relief can be granted.

TBS makes two additional arguments that K7 breached the contract.  First, TBS alleges that K7 breached its obligation to invest a minimum amount of $100,000 per month in marketing.  (Rec. Doc. No. 8, ¶¶ 28-30.)  Second, TBS alleges that K7 breached its obligation to use best efforts to sell TBS's product. (Id. ¶ 36.)  These arguments are not discussed under the "Counterclaim" portion of TBS's answer.  Although K7 addressed each of these arguments in its brief because it was unsure whether TBS would argue that they were part of its

counterclaim, TBS has clarified in its opposition that "[t]here is no allegation in the counterclaim regarding best efforts or failure to market as prescribed by the Agreement" and that it is "uncertain as to why these [] issues are addressed as they are not pertinent to the counterclaim. (Rec. Doc. No. 21, at 2.) Thus, it is now clear that TBS is not pursuing these allegations in the form of a counterclaim (although they are part of TBS's affirmative defense). Therefore, we need not address them here.

In concluding, having found that TBS's sole counterclaim is the allegation that K7 failed to purchase $84,000 between September 16, 2006 and October 12, 2006 and that this claim fails to state a claim upon which relief can be granted, the counterclaim must be dismissed.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

Plaintiff's Motion to Dismiss defendant's counterclaim is GRANTED.

(Rec. Doc. No. 15), and the counterclaim is dismissed.


      s/ James F. McClure, Jr.
JAMES F. McCLURE, JR.
United States District Judge